# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **CHONQUARO GREEN #445200** | **CASE NO. 6:18-CV-00806 SEC P** |
| **VERSUS** | **JUDGE MICHAEL J. JUNEAU** |
| **W S MCCAIN** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Pro se petitioner Chonquaro Green ("Green"), an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on June 15, 2018. [Rec. Doc. 1] Petitioner attacks his 2013 conviction for forcible rape and the subsequent thirty year sentence imposed thereon by the 27th Judicial District Court, St. Landry Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Background

The Louisiana Third Circuit Court of Appeal, on direct appeal, succinctly summarized the facts of the matter before this court as follows: "Defendant forced the victim into his truck while armed with a hatchet. He raped the victim twice." *State v. Green*, 2014-334 (La. App. 3 Cir. 10/1/14).

Petitioner, Chonquaro Green, was charged by bill of indictment with aggravated kidnapping, a violation of La.R.S. 14:44, and aggravated rape, a violation of La.R.S. 14:42. On July 25, 2013, a jury found him not guilty of the charge of aggravated kidnapping and guilty of the responsive verdict of forcible rape on the second count. After a hearing on a habitual offender bill, the trial court found Green to be a second offense sex offender, under La.R.S. 15:529.1, and on January 16, 2014, he was sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence.

He appealed his conviction and sentence and, on October 1, 2014, the Third Circuit Court of Appeals affirmed both. *State of Louisiana v. Chonquaro Green*, 2014 WL 4926196 (La. App. 3 Cir. 10/1/2014), 2014-334. He did not apply for writs of certiorari in the Louisiana Supreme Court [Rec. Doc. 1, p. 2, ¶ 9(g)].

On March 24, 2015, Petitioner filed an application for post-conviction relief in the 27th Judicial District Court, raising the following claims: (1) Petitioner was denied the right to "effective representation of counsel under the 6th and 14th Amendments to the U.S Constitution by overruling counsel's objection to late witness disclosure," (2) Petitioner was denied due process of law by being tried and convicted by a biased jury when a prior relationship existed between one juror and a witness of prior bad acts disclosed by the state prior to jury voir dire;" and (3) Petitioner was denied Due Process of Law when witnesses of prior bad acts

testimony went beyond the scope of mere admission of a prior bad act and went into intricate detail of the alleged event itself." [Rec. Doc. 1-3, p.56.] The trial court denied his application on April 29, 2015. [Rec. Doc. 1-3, pp. 67-68.]

On June 11, 2015, Petitioner filed a writ application in the Third Circuit Court of Appeal, Docket No. KH-15-00552, which was denied, in part, granted, in part, and made peremptory, in part. [Rec. Doc. 1-3, p. 69] On October 22, 2015, the appellate court denied writs on the issue of ineffective assistance of counsel, noting that petitioner conceded that his attorney was not at fault. Because the issue of the State's failure to give notice of calling a witness at sentencing to testify as to other crimes is not a grounds for post-conviction relief under La. C.Crim.P. 930.3, the court held that this claim was precluded from review. Finally, with respect to the argument that petitioner was denied due process by being tried and convicted by a biased juror, the father of a victim previously assaulted by petitioner, who later testified at his sentencing hearing, the trial court was ordered to hold an evidentiary hearing.

On February 18, 2016, an evidentiary hearing was held before the trial court. [See Rec. Doc. 1-3, pp. 17-40.] Petitioner was represented by counsel and at the conclusion of the testimony, the trial court found that the juror at issue was not aware prior to the trial that the petitioner was the perpetrator of the assault on his daughter. *Id*. at p. 22. Petitioner sought writs in the Third Circuit, in Docket Number KH-16-

00608, which was denied on February 22, 2107. [Rec. Doc. 1-3, p. 71.] His writ application to the Louisiana Supreme Court [Rec. Doc. 1-3, pp. 4-13] was denied on May 25, 2018. [Rec. Doc. 1-3, pp. 2-3.]

Petitioner filed the instant petition for habeas relief on June 15, 2018. He makes the following arguments: "(1) Petitioner was denied 5th and 14th Amendments Due Process protection against being tried and convicted by a biased jury, where the state knew prior to voir dire, but withheld from defense, that one of the jurors were the father of the state witness whom would be testifying during sentencing concerning an incident in which she was allegedly raped by defendant; and (2) Petitioner was constructively denied 6th Amendment right to effective assistance of counsel, by the state's late or no notice that other crimes evidence would be offered by the juror Carroll Soileau, Sr. Daughter Jessica Soileau, at petitioner's sentencing hearing, that 'Petitioner had raped her,' and by the trial court's denial of continuance or for a seven day recess." [Rec. Doc. 1-2, p. 3.]

**Law and Analysis**

**I. Standard of Review - 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the

4

state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (*quoting Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id*. at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id*. at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Statute of Limitations

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for filing applications for writs of habeas corpus by persons in custody pursuant to the judgment of a state court. This limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." 28 U.S.C. § 2244(d)(1)(A). Federal courts may raise the one-year limitations period *sua sponte. See Kiser v. Johnson*, 163 F.3d 326 (5th Cir. 1999).

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitations period. See 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). However, any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)).

6

Petitioner's conviction became final for AEDPA purposes on October 31, 2014, upon the expiration of the 30-day period for applying for certiorari with the Louisiana Supreme Court. Under 28 U.S.C. § 2244(d)(1) petitioner had one year, or until October 31, 2015, within which to file his federal habeas petition.

On March 24, 2015, petitioner filed an application for post-conviction relief in the 27th Judicial District Court, after 144 days accrued against §2244's one-year limit. After moving through the Louisiana state courts, his writ application was denied by the Louisiana Supreme Court on May 25, 2018. His petition was filed in this court on June 15, 2018, after a total of 165 days had accrued against §2244's one-year limit. Thus, this matter is timely.

### III. Exhaustion of State Court Remedies and Procedural Default

The claims of ineffective assistance of counsel and jury bias presently before this Court have been exhausted and rejected on the merits in the state courts. Therefore, no basis for procedural default exists.

### IV. Claims

#### a. Ineffective Assistance of Counsel

Petitioner first makes a claim of ineffective assistance of counsel, in violation of the Sixth Amendment, because his counsel did not investigate claims of prior bad acts allegedly committed by him, and witnesses called by the state to testify to same, as well as because the trial court denied counsel's request for a continuance.

7

However, he admits that "as the entire record evidence reflects, it was not defense counsel's fault that the state with their late or no notice, and the trial court's denial of continuance on request for a seven day recess to question possible witnesses presented by the state, which put counsel in a critical position to constructively deny petitioner the assistance of counsel altogether." [Rec. Doc. 1-2, p. 6.]

As argued by the Government, well-settled jurisprudence has determined that constructive denial of counsel occurs in only very limited circumstances, under which the instant matter does not apply. The United States Fifth Circuit Court of Appeal in *Gochicoa v. Johnson* reasoned as follows:

> When a criminal defendant receives no meaningful assistance from his court appointed lawyer, he is constructively denied his Sixth Amendment right to counsel and need not prove *Washington* prejudice. A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.
>
> We have found constructive denial in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense; and have stated that constructive denial will be found when counsel fails to subject the prosecution's case to any meaningful adversarial testing. For example, where counsel's sole duty was to execute a waiver of petitioner's right to jury trial, and therefore counsel was appointed one to two minutes before the plea, never investigated the facts, never discussed the applicable law with petitioner, and never advised petitioner of the rights petitioner was surrendering, petitioner was constructively denied counsel.

> In contrast, we have refused to find constructive denial where defense counsel investigated only certain issues, where counsel's trial presentation was "somewhat casual," where counsel failed to pursue a challenge based on racial bias in jury selection, to object to a variation between the indictment and the jury charge, or to raise a meritorious issue on appeal. Thus, prejudice is presumed, and *Washington's* second prong inapplicable, only when the defendant demonstrates that counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all. When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the per se presumption of prejudice. The critical question is whether the [petitioner] asserts that he received incompetent counsel, or none at all.
>
> When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel.

238 F.3d 278, 283–85 (5th Cir. 2000) (internal citations omitted.)

Green contends that the state failed to disclose witnesses of prior bad acts allegedly committed by him prior to the selection of the jury and that his counsel was not given the opportunity to investigate the claims since there was no pre-trial hearing held to determine if other crimes evidence should have been admitted in the first place. Counsel objected to these witnesses being allowed, but his objection was denied, as the trial court found that the state had given notice, one week after the jury was selected, one week prior to trial. He admits that his counsel attempted to raise the issue of notice at the beginning of trial, but the court again denied his objection.

Any claim that trial counsel "wholly abdicated his role in the adversarial process" and that his performance was not merely incompetent, it was inert," is unsupported and erroneous. "When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel." *Goodwin v. Johnson*, 132 F.3d 162, 176 n.10 (5th Cir. 1997). Accordingly, because the Petitioner admits that his counsel was neither inert nor incompetent, and the record corresponds with Petitioner's admission, Petitioner needs to satisfy both prongs set forth by *Strickland v. Washington*, 466 U.S. 668 (1984) in order to prevail on an ineffective assistance of counsel claim.

Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 687. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. When considering allegations of ineffectiveness, defense attorneys are accorded a strong presumption that their conduct fell within the broad range of reasonable professional conduct. *United States v. Cronic*, 466 U.S. 648 (1984), *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). It is well established that appellate courts do not sit to second-guess strategic and tactical

choices made by trial counsel, for effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. *State ex rel. Graffagnino v. King*, 436 So.2d 559, 564 (1983); *State v. Myles*, 389 So.2d 12, 31 (La. 1980). Any inquiry into the effectiveness of counsel must be specific to the facts of the case and, consequently, defense counsel is accorded a strong presumption that his challenged conduct falls within the broad range of reasonable professional conduct. *State v. Peart*, 621 So.2d 780, 788 (La. 1993). Accordingly, defendant must demonstrate that his trial counsel failed to meet the level of competency normally demanded of attorneys in criminal cases. *State v. Everett*, 530 So.2d 615, 625 (La. App. 3rd Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). Judges have been cautioned towards deference in their review of attorney performance under Strickland claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In other words,

11

the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

This Court agrees with the Government's argument that Petitioner failed to particularize with any specificity how his trial counsel failed to meet the level of competency normally demanded of criminal defense attorneys and how his attorney's performance compromised his defense. Additionally, the Court finds that that the record does not adequately or sufficiently reflect an ineffective assistance of counsel claim. Thus, his attorney acted sufficiently, and petitioner was not constructively denied effective assistance of counsel. Petitioner failed to prove either prong of the *Strickland* test.

The trial court held that Petitioner had not shown that his counsel was ineffective and incompetent such that he was denied a fair trial. The court disagreed with Petitioner's argument that late disclosure of the other crimes evidence prohibited his counsel to adequately select or strike jurors. It held that counsel "was afforded all rights provided under the criminal code," "was allowed to raise any challenges in order to strike jurors and was afforded ample attorney to prepare a

defense for witnesses." [Rec. Doc. 1-3, p. 67.] Finally, of note to the trial court was the fact that defendant raised ineffective assistance of counsel, "but in the same breadth (sic) states that it was the court not his own counsel that was ineffective." *Id*. This Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

### b. Jury Bias

Petitioner also argues that he was denied Fifth and Fourteenth Amendment Due Process protection against being tried and convicted by a biased jury, "where the state knew prior to voir dire, but withheld from defense, that one of the jurors were (sic) the father of the state witness who would be testifying during sentencing concerning an incident in which she was allegedly raped by the defendant." Rec. Doc. 1-2, p. 3.]

Juror bias can come to light in two ways: "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed". *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988) (citing *U.S. v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976)). The petition before this Court raises the concept of implied juror bias.

In *Smith v. Phillips,* Justice O'Connor's concurring opinion stated:

> . . . in certain instances a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice. While each case must turn on its own facts, there

>are *some extreme situations that would justify a finding of implied bias*. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Smith*, 455 U.S. at 222 (O'Connor, J., concurring).

Based on Justice O'Connor's concurrence, the Fifth Circuit has made clear that the implied bias doctrine is "clearly established Federal law as determined by the Supreme Court." *Ingram v. Goodwin*, 981 F.Supp. 2d 553, 562 (W.D. La., Sept. 17, 2013) (*citing Brooks v. Dretke*, 444 F.3d 328, 329 (5th Cir. 2006). Therefore, the key inquiry in a case involving a claim of implied juror bias is "'whether [the juror's] conduct is of the genre of cases O'Connor pointed to in . . . *Phillips*: juror conduct not salvageable by post event hearings.'" *Id*.

The standard for determining if a juror was biased is "whether the prospective 'juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). A juror is not biased if he can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

The Fifth Circuit has "cautioned that 'the [Supreme] Court has not looked favorably upon attempts to impute bias to jurors,' and that only '*extreme situations*'

would justify such a finding." *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003).

In *Solis*, the Fifth Circuit reviewed prior cases where it had refused to imply bias:

> [W]e rejected a contention that a juror's attenuated familial connection with the victim warranted a presumption that the juror was biased. The victim's grandson had, prior to the victim's death, been married to the juror's daughter. However, the grandson had died prior to the victim's death, and no evidence suggested that the juror even knew that he had at one time been related to the victim. We 'refuse[d] to impute bias' to the juror on the basis of such a "tenuous relationship" between him and the victim. Similarly, in *United States v. Wilson* we held that 'friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias.'

*Id*. (citing *Andrew v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994).

As stated by the Government, this case involves facts that came to light after the trial and sentencing were concluded. Here, the trial court held an evidentiary hearing as ordered by the Louisiana Third Circuit Court of Appeals. [*See* Transcript of Evidentiary Hearing, Rec. Doc. 10-8, pp. 34-104.] Mr. Soileau testified in that hearing that when he was originally questioned in regard to service on a jury at the trial of the Petitioner, he indicated to the court and to defense counsel that he knew his daughter had been the subject of a sexual assault. *Id*. at pp. 83-84. At that time, he did not know the identity of the person responsible for the assault. *Id*. at p. 84. He and his daughter had never discussed the identity of that person prior to him serving on the jury. *Id*. He testified that his connection to his daughter, particularly at that time, was very limited. *Id*. He was informed of the rape by his daughter's mother and while he did visit her in the hospital following the assault, his daughter

15

only told him that it was "her word against his," and did not name the perpetrator.

*Id*.

    Regarding the jury questioning, he testified:

Q: So, when you had served on the jury, did you – I mean, in voir dire, when the questioning of the witnesses- the jurors- for potential service, as we call it, before you were selected, you clearly indicated that your daughter had been the victim of a sexual assault, did you not?

A: Well, they asked me if anybody had ever had a relative being raped. I picked up my – I said, I did. They asked me if that would determine the outcome of the- I told them no.

Q: Did it play any part in your decision making process in the case of Mr. Green?

A: Well, that's what they asked me. I told them no.

Q: But afterward, when you went in to decide the case, did you think about your daughter's case at all?

A: No.

*Id*. at pp. 84-85.

    Mr. Soileau testified that because his daughter was allegedly raped while buying dope, he did not want or need to know anything further because "she might have deserved that…" *Id*. at p. 90.

    At the evidentiary hearing, Mr. Soileau was thoroughly cross-examined by Petitioner's counsel and remained adamant that he did not know that the Petitioner was the perpetrator of his daughter's alleged rape. He testified that did not find out

16

that the Petitioner was the perpetrator of his daughter's crime until weeks after the trial. *Id*. at p. 92.

Mr. Soileau's daughter, Jessica Lynn Soileau ("Ms. Soileau"), testified that when she was assault in 2002 by Mr. Green, she did not know his name. *Id*. at p. 93. A few years after the incident, while doing community service at a courthouse, she learned his name when he appeared for a drug charge and she recognized him. *Id*. She testified that she did not ever communicate the name of the person who assaulted her to her father. *Id*. She stated that she did not identify the Petitioner in a photographic line-up until October 16, 2013, after Petitioner's trial in the instant matter. *Id*. at pp. 94-95. She did not inform her father until after the sentencing hearing that the Petitioner was the person who raped her. *Id*. at p. 95. In fact, she did not even know her father served on a jury until after the sentencing hearing. *Id*.

The United States Court of Appeals for the Fifth Circuit has explained the deferential standard of review under the AEDPA in the context of a claim of juror bias as follows:

> Juror bias vel non is a finding of fact. Pursuant to AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by *clear and convincing evidence*." 28 U.S.C. § 2254(e)(1) (emphasis added). Accordingly... to succeed on his juror-bias claim, [petitioner] must show "the adjudication of the claim [on the merits in State court proceeding] ... resulted in a decision that was based on an *unreasonable* determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (emphasis added).

*White v. Quarterman*, 275 F. App'x 380, 381 (5th Cir. 2008).

Petitioner asserted this claim in his state post-conviction proceedings. The Louisiana Third Circuit Court of Appeals ordered the trial court to hold an evidentiary hearing concerning the specific issue of whether Mr. Soileau knew while sitting as a juror at Petitioner's trial that the Petitioner allegedly raped his daughter. [Rec. Doc. 1-3, p. 69.] Following an evidentiary hearing, the trial court found that the juror, Mr. Soileau, was not aware that the Petitioner was the perpetrator of the crime against his daughter. [Rec. Doc. 10-8, p. 103]. The trial court was in the best position to judge the credibility of Mr. Soileau and Ms. Soileau. For the foregoing reasons, denial of relief on this claim by the state court was not clearly contrary to Supreme Court precedent or an unreasonable fact-finding. Federal habeas relief is, therefore, unwarranted on this claim.

### *Conclusion*

**IT IS RECOMMENDED THAT** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See,** *Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, January 31, 2019.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**